UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERGIO GARCIA,<br><br>                              Plaintiff,<br><br>                      v.<br>CURATED SOUNDS LLC D/B/A INNER CIRCLE MUSIC GROUP, a limited liability corporation; BRIAN ONUOHA, an individual; and DVANTE HEMPHILL, an individual,<br><br>                              Defendants. | Case No.  26-cv-2908<br><br><br>**JURY DEMAND** |

**COMPLAINT**

Plaintiff SERGRIO GARCIA (P.K.A "2Slimey") ("Plaintiff"), by and through undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action arising from Defendants' fraudulent scheme to mislead Plaintiff into entering an agreement (the "Agreement") that was represented as a management contract, but was in fact a co-ownership agreement granting Defendants perpetual ownership rights in Plaintiff's music and intellectual property.

2.      Defendants' conduct constitutes, inter alia, fraudulent inducement, warranting rescission of the Agreement, and conversion of Plaintiff's property rights.

**PARTIES**

3.      Plaintiff is an individual and a musical artist who creates and commercially exploits original music. Plaintiff is a citizen of California.

4.      Upon information and belief, Defendant CURATED SOUNDS LLC d/b/a INNER CIRCLE MUSIC GROUP is a limited liability company organized under the laws of the State of

1

Texas, with a principal place of business at: 2442 S Collins St., STE #2303, Arlington, Texas 76014.

5. Upon information and belief, Defendant BRIAN ONUOHA is an individual who resides in and is a citizen of the State of Texas and is sole manager of INNER CIRCLE LLC.

6. Upon information and belief, Defendant DVANTE HEMPHILL is an individual who resides in and is a citizen of the State of Texas.

7. Defendants Curated Sounds LLC d/b/a Inner Circle Music Group, Brian Onuoha, And Dvante Hemphill will be collectively known as "Defendants."

8. Upon information and belief, all Defendants conduct business in interstate commerce and participated in, benefited from, and/or aided the wrongful conduct alleged herein.

9. Upon information and belief, Defendants Curated Sounds LLC are alter egos for Defendants Brian Onuoha and Devante Hemphill.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1332. There is complete diversity between parties and the amount in controversy is above $75,000.

11. This Court also has original jurisdiction over the Copyright claims in this suit pursuant to 28 U.S.C. § 1338 because the claims arise under an Act of Congress related to Copyright.

12. Venue is proper in this Court because Defendants contractually agreed and waived any challenge to venue in New York.

13. This Court has personal jurisdiction over all Defendants because Defendants contractually agreed and waived any challenge to personal jurisdiction in New York.

## FACTUAL ALLEGATIONS

14.    Plaintiff Sergio Garcia, professionally known as "2Slimey," is a musical artist who creates, performs, and commercially exploits original music and related intellectual property.

15.    On or about November 2025, Defendants Curated Sounds LLC d/b/a Inner Circle Music Group, Brian Onuoha, and Dvante Hemphill approached Plaintiff in connection with Plaintiff's music career under the premise that they would assist Plaintiff's current manager, Joshua Campos, in managing and developing Plaintiff's career.

16.    Defendants presented themselves as managers and management-side participants who would help with marketing, promotion, industry opportunities, and related career development services.

17.    During those discussions, Defendants represented to Plaintiff that their arrangement would be a standard management relationship under which Defendants would receive approximately twenty percent (20%) of Plaintiff's earnings.

18.    In discussions, Plaintiff was expressly told that he would retain ownership of his music and intellectual property.

19.    At no time during those discussions did Defendants tell Plaintiff that Defendants would claim ownership of Plaintiff's master recordings, future albums, publishing, or related intellectual property.

20.    Prior to entering the Agreement, Defendants did not discuss with Plaintiff that the Agreement would grant Defendants exclusive ownership of Plaintiff's publishing rights, even though publishing constitutes a major and separate source of revenue for recording artists independent of rights in master recordings.

3

21.    On or about December 12, 2025, Defendants transmitted to Plaintiff a written Agreement. Inner Circle Deal ("Exhibit A").

22.    The Agreement was provided to Plaintiff less than approximately twelve (12) hours before Defendants demanded that it be executed.

23.    Defendants represented to Plaintiff that the Agreement reflected the management arrangement they had described to him.

24.    On the evening of December 12, 2025, Defendant Dvante Hemphill was physically present with Plaintiff and pressured Plaintiff to sign the Agreement immediately.

25.    At the time, Plaintiff had just completed a long day of marketing and media-related activities, was fatigued, and was not in a condition to meaningfully review or understand the Agreement.

26.    Hemphill nevertheless insisted that the Agreement be signed that night, discouraged meaningful review, and did not permit Plaintiff a fair opportunity to understand the material terms of the Agreement.

27.    Plaintiff was unable to obtain the advice or consent of counsel before the Agreement was purportedly executed.

28.    Plaintiff was never given his own lawyer in connection with the Agreement and was never afforded a meaningful opportunity to retain separate counsel to review it on his behalf.

29.    Defendants did not meaningfully explain the material provisions of the Agreement to Plaintiff.

30.    Defendants' misrepresented to Plaintiff that the Agreement was a standard 20% management arrangement and that Plaintiff would continue to own his music and related intellectual property.

31.    Upon information and belief, Plaintiff did not execute the Agreement himself. Rather, Hemphill executed the Agreement electronically on Plaintiff's behalf, or caused it to be executed, without Plaintiff's authorization.

32.    To the extent Defendants contend Plaintiff executed or assented to the Agreement, any such execution or assent was procured through material misrepresentations, pressure, and deception, and was not knowingly or voluntarily given.

33.    Contrary to Defendants' representations, the Agreement was not a standard management agreement. Instead, it purported to grant Defendants sweeping ownership, control, and exclusive rights over Plaintiff's recordings, intellectual property, and business activities.

34.    Among other things, the Agreement purported to treat Plaintiff's work as a work made for hire, to grant Defendants exclusive and perpetual rights in Plaintiff's recordings and related intellectual property, and to impose long-term restrictions on Plaintiff's ability to record, release, and exploit music independently.

35.    The Agreement further purported to give Defendants rights in connection with Plaintiff's next six albums and publishing, despite Defendants having represented prior to presenting the Agreement to Plaintiff that their role would be limited to management services for a commission.

36.    The terms of the Agreement did not reflect the management representations made to Plaintiff and were materially different from what Defendants told Plaintiff he was signing.

37.    On or about January 23, 2026, Defendants, purporting to act for Plaintiff and to furnish Plaintiff's exclusive recording services, entered into a separate exclusive recording agreement with Listen To The Kids Distribution, LLC ("LTTK") on Plaintiff's behalf.

38.     Defendants entered into the LTTK agreement without ensuring that Plaintiff had separate legal counsel and without giving Plaintiff a meaningful opportunity to review the agreement with his own attorney.

39.     Plaintiff did not knowingly authorize Defendants to enter into the LTTK agreement on his behalf, nor was he given a meaningful opportunity to review or approve its terms before it was executed.

40.     Plaintiff did not knowingly authorize Defendants to enter into the LTTK agreement on his behalf, nor did Plaintiff knowingly authorize Defendants to grant third parties rights in his services, recordings, or intellectual property.

41.     In connection with the LTTK transaction, Defendants caused or permitted an artist inducement and guarantee to be executed in Plaintiff's name that purported to state, among other things, that Plaintiff understood the agreement, had the opportunity to consult independent legal counsel of his choosing, assented to the execution of the agreement, and ratified the grants, restrictions, and other provisions contained therein.

42.     Those representations were false. Plaintiff was not provided separate, independent legal counsel in connection with the LTTK agreement, was not given a meaningful opportunity to review that agreement with his own lawyer, and did not knowingly ratify the broad grants and restrictions contained therein.

43.     Upon information and belief, Defendants used the artist inducement and guarantee as part of a fabricated paper trail intended to create the false appearance that Plaintiff knowingly approved and ratified the downstream LTTK transaction.

44.     That LTTK agreement was not a mere management-related arrangement. It purported to bind Plaintiff to an exclusive recording relationship, required delivery of multiple

recording projects, and granted extensive rights in Plaintiff's recordings, services, and related intellectual property to third parties.

45. The LTTK agreement demonstrates that Defendants were not acting as mere managers entitled to a limited commission, as they had represented to Plaintiff, but instead were using the purported Agreement entered on December 12, 2025 to claim and exploit ownership and control over Plaintiff's exclusive recording services and intellectual property.

46. The downstream LTTK agreement provided for a $100,000 advance intended for Plaintiff.

47. Plaintiff received only $42,000 of that $100,000 advance.

48. Upon information and belief, Defendants retained, diverted, controlled, or otherwise failed to remit the balance of the advance intended for Plaintiff.

49. Upon information and belief, Defendants also retained or diverted monies from Plaintiff's live performances and show revenue.

50. Upon information and belief, Defendants have attempted to negotiate or enter into additional deals on Plaintiff's behalf without Plaintiff's knowledge or authorization.

51. On or about February 2, 2026, Defendant Brian Onuoha caused an entity titled "2Slimey LLC" to be formed in the State of Texas.

52. Upon information and belief, Onuoha designated himself as a fifty percent (50%) owner and manager of 2Slimey LLC without Plaintiff's knowledge, authorization, or consent.

53. Plaintiff has demanded release from the Agreement and disaffirmed any authority claimed by Defendants.

54. Despite Plaintiff's demand for release, Onuoha has continued to wrongfully claim that Defendants own Plaintiff's music, master rights, and publishing.

55.    Defendants have used the purported Agreement, the LTTK agreement, and related entities to assert control over Plaintiff's music, recordings, intellectual property, business activities, and revenue streams.

56.    Defendants have held themselves out as authorized to act on Plaintiff's behalf and have interfered with Plaintiff's control over his own career and business affairs.

57.    On or about March 3, 2026, Onuoha, acting on behalf of Curated Sounds LLC, issued an employment verification letter representing that Plaintiff was under a binding exclusive recording agreement with Curated Sounds LLC, remained in good standing, and had received compensation in the form of structured recording advances, contracted performance fees, and royalty participation.

58.    That employment verification letter further represented that Plaintiff had received an "Advance Payment Disbursed" in the amount of $43,600, that a second advance in the same amount was scheduled, and that Plaintiff was contractually entitled to performance income of $10,000 per month for six months, for total guaranteed contracted income of $147,200.

59.    Upon information and belief, those representations were materially false, misleading, incomplete, and/or unsupported by actual agreements or actual payments made to Plaintiff.

60.    Defendants used the employment verification letter and similar representations to hold themselves out as having lawful authority over Plaintiff's exclusive recording services, compensation, and contractual affairs, even after Plaintiff disputed Defendants' authority and demanded release.

61.    Defendants' execution of the LTTK agreement, use of the artist inducement and guarantee, diversion of advance funds, and subsequent written representations regarding Plaintiff's

contractual status and compensation were all acts in furtherance of the same fraudulent scheme to obtain and exercise ownership, control, and financial benefit from Plaintiff's career under false pretenses.

62. Defendants' conduct was not the product of mistake or misunderstanding. Instead, it was part of a coordinated scheme to induce Plaintiff to enter, or appear to enter, into an agreement materially different from what Defendants represented, and then to use that agreement to obtain ownership, control, and money belonging to Plaintiff.

63. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including loss of money, loss of control over his recordings and intellectual property, interference with business opportunities, and harm to his career.

## COUNT I
### Rescission of Contract

64. Plaintiff repeats and realleges paragraphs 1 through 63 as if fully set forth herein.

65. The December 12, 2025 Agreement was procured through fraud, misrepresentation, deception, pressure, and lack of informed assent.

66. Defendants represented to Plaintiff that the Agreement was a standard management arrangement under which Defendants would receive a limited commission while Plaintiff retained ownership of his music, masters, publishing, and related intellectual property.

67. In reality, the Agreement purported to transfer sweeping ownership, control, and exclusive rights over Plaintiff's recordings, future works, publishing, name, likeness, and business activities.

68. Plaintiff did not knowingly or voluntarily enter into the Agreement with a full understanding of its material terms.

69.    To the extent the Agreement was executed in Plaintiff's name, such execution was unauthorized, fraudulently procured, or otherwise ineffective.

70.    The Agreement lacks a true meeting of the minds and is voidable, and, upon information and belief, void.

71.    Alternatively, the Agreement is subject to rescission because it provided, at most, nominal, illusory, circular, and grossly inadequate consideration to Plaintiff, and, to the extent any consideration was promised, Defendants failed to provide it.

72.    Plaintiff has promptly sought to disaffirm the Agreement upon discovering the true nature of Defendants' conduct and claims of ownership.

73.    Equity requires that the Agreement be rescinded and that the parties be restored to their pre-contract positions.

## COUNT II
### Fraudulent Inducement

74.    Plaintiff repeats and realleges paragraphs 1 through 73 as if fully set forth herein.

75.    Defendants made material misrepresentations of fact to Plaintiff regarding the nature, purpose, and effect of the Agreement.

76.    Among other things, Defendants represented that the Agreement was a standard management arrangement, that Defendants would merely assist Plaintiff's manager and receive approximately twenty percent (20%) of Plaintiff's earnings, and that Plaintiff would retain ownership of his music and intellectual property.

77.    Defendants knew these representations were false when made or made them with reckless disregard for their truth.

78.    Defendants intended that Plaintiff rely on those representations in deciding whether to sign, or appear to sign, the Agreement.

10

79.    Plaintiff justifiably relied on Defendants' representations.

80.    As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff suffered damages, including but not limited to loss of money, loss of ownership rights, loss of control over his career, and loss of business opportunities.

## COUNT III
### Fraud in the Factum / Fraud in the Execution

81.    Plaintiff repeats and realleges paragraphs 1 through 80 as if fully set forth herein.

82.    Defendants misrepresented the very nature and character of the document they were presenting to Plaintiff, representing that it was a standard management arrangement rather than an agreement purporting to transfer sweeping ownership and control rights.

83.    Defendants pressured Plaintiff to execute, or appear to execute, the Agreement without meaningful review, without separate counsel, and without a fair opportunity to understand its actual terms.

84.    Upon information and belief, Plaintiff did not execute the Agreement himself. Rather, Defendant Hemphill executed the Agreement electronically on Plaintiff's behalf, or caused it to be executed, without Plaintiff's authorization.

85.    As a result, Plaintiff did not knowingly assent to the Agreement, and any purported execution or assent is invalid and ineffective.

86.    Plaintiff has suffered damages as a result of Defendants' conduct.

## COUNT IV
### Breach of Fiduciary Duty

87.    Plaintiff repeats and realleges paragraphs 1 through 86 as if fully set forth herein.

11

88.    Defendants held themselves out as Plaintiff's managers, management-side representatives, and trusted business advisors, and undertook to act on Plaintiff's behalf in connection with his career, music, and business affairs.

89.    By reason of that relationship, Defendants owed Plaintiff fiduciary duties, including duties of loyalty, honesty, full disclosure, fair dealing, and the duty not to self-deal or usurp Plaintiff's rights or opportunities.

90.    Defendants breached those duties by, among other things:

   a.    misrepresenting the nature of the Agreement;

   b.    failing to disclose that Defendants were claiming ownership and control over Plaintiff's masters, future works, publishing, and related rights;

   c.    causing or purporting to cause the execution of agreements without Plaintiff's informed consent;

   d.    diverting, withholding, or failing to remit monies intended for Plaintiff, including advance funds and show income;

   e.    attempting to negotiate or enter into deals on Plaintiff's behalf without authorization; and

   f.    asserting ownership and control over Plaintiff's music, publishing, and business affairs for Defendants' own benefit.

91.    Defendants' breaches were intentional, willful, self-interested, and in bad faith.

92.    As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT V
## Conversion

93.    Plaintiff repeats and realleges paragraphs 1 through 92 as if fully set forth herein.

94.    Plaintiff had and has a superior possessory and ownership interest in specific, identifiable property, including but not limited to monies intended for Plaintiff from the LTTK advance, show income, other revenue streams, and proceeds derived from Plaintiff's recordings, services, and intellectual property.

95.    Defendants wrongfully exercised dominion and control over such property by retaining, diverting, withholding, misdirecting, or claiming ownership over money and proceeds belonging to Plaintiff.

96.    Defendants also wrongfully asserted dominion and control over Plaintiff's recordings, masters, publishing, and related rights in a manner inconsistent with Plaintiff's ownership and possessory interests.

97.    Defendants' conduct was unauthorized and in derogation of Plaintiff's rights.

98.    As a direct and proximate result of Defendants' conversion, Plaintiff suffered damages.

## COUNT VI
## Declaratory Judgment

99.    Plaintiff repeats and realleges paragraphs 1 through 98 as if fully set forth herein.

100.    An actual, present, and justiciable controversy exists between the parties concerning the validity and enforceability of the December 12, 2025 Agreement and Defendants' claimed rights thereunder.

101. Defendants contend, among other things, that they own or control Plaintiff's music, master rights, publishing, name, likeness, business affairs, and related revenue streams, and that they had authority to enter into downstream agreements on Plaintiff's behalf.

102. Plaintiff disputes those claims and contends that the Agreement is void, voidable, unenforceable, rescinded, and/or invalidly executed.

103. Plaintiff further contends that Defendants have no ownership, license, management, publishing, security, or other rights in Plaintiff's recordings, compositions, publishing, name, likeness, future works, revenue streams, or business affairs.

104. Plaintiff seeks a declaration that:

    a.    the December 12, 2025 Agreement is void, voidable, unenforceable, invalid, and/or rescinded;

    b.    Defendants have no ownership or control rights in Plaintiff's recordings, masters, publishing, name, likeness, future works, or income;

    c.    Defendants lacked authority to bind Plaintiff to downstream agreements based on the December 12, 2025 Agreement; and

    d.    any entity or structure created or used by Defendants to claim ownership or control over Plaintiff's rights, including "2Slimey LLC," does not confer such rights against Plaintiff.

## COUNT VII
### Accounting

105. Plaintiff repeats and realleges paragraphs 1 through 104 as if fully set forth herein.

106. Defendants held themselves out as acting on Plaintiff's behalf and exercised control over Plaintiff's money, rights, deals, and revenue streams.

107.    Upon information and belief, Defendants received, controlled, withheld, diverted, or distributed funds and proceeds belonging to Plaintiff, including but not limited to advance monies, show income, royalties, and other compensation.

108.    The precise amounts received, retained, diverted, and disbursed by Defendants are within Defendants' exclusive knowledge and control.

109.    In equity and good conscience, Defendants should be required to provide a full accounting of all monies, proceeds, rights, and transactions involving Plaintiff and his music, services, and intellectual property.

## COUNT VIII
### Unjust Enrichment (Pled in the Alternative)

110.    Plaintiff repeats and realleges paragraphs 1 through 110 as if fully set forth herein.

111.    To the extent the December 12, 2025 Agreement is void, voidable, rescinded, unenforceable, invalidly executed, or otherwise ineffective, Defendants have been unjustly enriched at Plaintiff's expense.

112.    Defendants obtained money, rights, control, leverage, and benefits belonging to Plaintiff, including but not limited to advance funds, show income, ownership claims, downstream deal rights, and business opportunities.

113.    Equity and good conscience require restitution, disgorgement, and repayment to Plaintiff of all such unjustly obtained benefits.

## COUNT IX
### Unconscionability / Unenforceability

114.    Plaintiff repeats and realleges paragraphs 1 through 113 as if fully set forth herein.

15

115.    The Agreement is procedurally unconscionable because it was presented under conditions of pressure, unequal bargaining power, misrepresentation, lack of separate counsel, and without a meaningful opportunity for Plaintiff to review or understand its terms.

116.    The Agreement is substantively unconscionable because its terms are grossly one-sided and unreasonably favorable to Defendants, including provisions purporting to grant Defendants sweeping and oppressive rights over Plaintiff's masters, publishing, future works, name, likeness, revenue streams, and business activities.

117.    The purported consideration for these extraordinary transfers and restrictions was, at most, nominal, circular, illusory, recoupable, or otherwise grossly inadequate.

118.    The Agreement shocks the conscience and should be declared unenforceable in whole or in part.

119.    As a result of Defendants' conduct and the unconscionable nature of the Agreement, Plaintiff has suffered damages.

## COUNT X
### Declaration of Invalid Transfer of Copyright

120.    Plaintiff repeats and realleges paragraphs 1 through 119 as if fully set forth herein.

121.    Plaintiff is the author and original owner of the copyrighted musical works, sound recordings, and related intellectual property at issue in this action, including but not limited to works created, recorded, and released under the name "2Slimey."

122.    Defendants contend that, pursuant to the December 12, 2025 Agreement, Plaintiff transferred or assigned to Defendants ownership rights in Plaintiff's sound recordings, musical compositions, and related copyrighted works.

123. The Copyright Act requires that any transfer of copyright ownership be evidenced by a valid instrument of conveyance in writing and signed by the owner of the rights conveyed or by the owner's duly authorized agent. 17 U.S.C. § 204(a).

124. The purported Agreement does not constitute a valid instrument of conveyance under 17 U.S.C. § 204(a) because, among other reasons:

    a.    Plaintiff did not knowingly or voluntarily execute the Agreement;

    b.    upon information and belief, Plaintiff did not execute the Agreement at all, and any purported execution was unauthorized;

    c.    any purported assent was procured through fraud, misrepresentation, and deception; and

    d.    Defendants were not duly authorized agents of Plaintiff for purposes of transferring copyright ownership.

125. Because the Agreement was not validly executed by Plaintiff and was procured through fraud, it is ineffective to transfer any copyright ownership rights.

126. To the extent Defendants contend that the works at issue constitute "works made for hire," such contention fails because:

    a.    Plaintiff is not an employee of Defendants within the meaning of the Copyright Act; and

    b.    the works do not fall within any category of specially ordered or commissioned works that qualify as "works made for hire" under 17 U.S.C. § 101; and

    c.    any purported work-for-hire designation was not knowingly or validly agreed to by Plaintiff.

127. Accordingly, no valid transfer of copyright ownership has occurred, and all right, title, and interest in the copyrighted works remain vested in Plaintiff.

128. An actual and justiciable controversy exists between the parties regarding ownership of the copyrighted works, including Defendants' claims of ownership and control and Plaintiff's denial of those claims.

129. Plaintiff is entitled to a declaration that:

   a.    the December 12, 2025 Agreement did not effect a valid transfer of copyright ownership under 17 U.S.C. § 204;

   b.    Defendants have no ownership interest in Plaintiff's copyrighted works; and

   c.    Plaintiff is the sole owner of the copyrights in the works at issue.

## COUNT XI
### Declaration of Invalid Transfer of Copyright

130. Plaintiff repeats and realleges paragraphs 1 through 130 as if fully set forth herein.

131. Plaintiff is the author and original owner of the copyrighted musical works, sound recordings, and related intellectual property at issue in this action, including works created and released under the name "2Slimey."

132. Defendants contend that, pursuant to the December 12, 2025 Agreement, Plaintiff transferred or assigned ownership rights in Plaintiff's sound recordings, musical compositions, and related copyrighted works.

133. Defendants further relied on that purported Agreement to enter into a downstream exclusive recording agreement with Listen To The Kids Distribution, LLC ("LTTK"), under which Curated Sounds LLC purported to furnish Plaintiff's exclusive recording services and grant rights in Plaintiff's recordings and services to LTTK.

134.    The LTTK agreement purports to grant broad and exclusive rights in Plaintiff's "Masters" and related materials, including the right to exploit, license, and control Plaintiff's recordings and performances, based entirely on Defendants' claimed authority under the December 12, 2025 Agreement.

135.    The Copyright Act requires that any transfer of copyright ownership be evidenced by a valid instrument of conveyance in writing and signed by the owner of the rights conveyed or by the owner's duly authorized agent. 17 U.S.C. § 204(a).

136.    The purported instrument of conveyance (the December 12, 2025 Agreement) does not constitute a valid transfer under 17 U.S.C. § 204(a) because:

a.    Plaintiff did not knowingly or voluntarily execute the Agreement;

b.    upon information and belief, Plaintiff did not execute the Agreement at all, and any purported execution was unauthorized;

c.    any purported assent was procured through fraud, misrepresentation, and deception; and

d.    Defendants were not duly authorized agents of Plaintiff for purposes of transferring copyright ownership.

137.    Because the December 12, 2025 Agreement is invalid and ineffective to transfer copyright ownership, Defendants had no authority to convey any ownership or exclusive rights in Plaintiff's copyrighted works to LTTK or any other third party.

138.    Accordingly, any purported rights granted in the LTTK agreement that depend on Defendants' claimed ownership or authority are likewise invalid, ineffective, and unenforceable as against Plaintiff.

139.    To the extent Defendants contend that Plaintiff's works constitute "works made for hire," such contention fails because:

    a.    Plaintiff is not an employee of Defendants within the meaning of the Copyright Act;

    b.    the works at issue do not fall within any category of specially ordered or commissioned works that qualify as "works made for hire" under 17 U.S.C. § 101; and

    c.    any purported work-for-hire designation was not knowingly or validly agreed to by Plaintiff.

140.    An actual and justiciable controversy exists between the parties regarding ownership of Plaintiff's copyrighted works, including Defendants' claims of ownership and control and Plaintiff's denial of those claims.

141.    Plaintiff is entitled to a declaration that:

    a.    the December 12, 2025 Agreement did not effect a valid transfer of copyright ownership under 17 U.S.C. § 204;

    b.    Defendants have no ownership interest in Plaintiff's copyrighted works;

    c.    Defendants lacked authority to grant any ownership or exclusive rights in Plaintiff's works to LTTK or any other third party; and

    d.    Plaintiff is the sole owner of the copyrights in the works at issue.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants as follows:

A.  Rescinding the December 12, 2025 Agreement in its entirety;

20

B.  Declaring that the December 12, 2025 Agreement is void, voidable, unenforceable, invalid, and/or rescinded;

C.  Declaring that Defendants have no ownership, license, management, publishing, security, or other rights in Plaintiff's copyrights, recordings, masters, compositions, publishing, name, likeness, future works, income, or business affairs;

D.  Awarding compensatory damages in an amount to be determined at trial;

E.  Awarding punitive damages to the extent permitted by law;

F.  Ordering Defendants to account for and disgorge all monies, profits, proceeds, and benefits derived from Plaintiff's music, services, and intellectual property;

G.  Imposing restitution, unjust enrichment recovery, and/or a constructive trust over monies and assets wrongfully obtained from Plaintiff;

H.  Awarding costs and disbursements; and

I.  Granting such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*/s/ Benjamin Lockyer*
Benjamin Lockyer (Pro Hac Vice Pending)
Lockyer Law LLC
6515 W. Archer Ave.
Chicago, Illinois 60638
Ben@lockyerlaw.com
773-340-0011

*/s/ Lauren Salatto-Rosenay*
Lauren Salatto-Rosenay
BAMERT REGAN
600 1st Ave, Suite 330-55215
Seattle, Washington 98104
rosenay@BamertRegan.com
206.486.7022

21